1
2
3
4
5
6
7



8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                 CASE NO. 07cr0131 JM

12                             Plaintiff,      **ORDER GRANTING
                                               MOTION TO DISMISS THE**
13       vs.                                   **INDICTMENT FOR INVALID
                                               DEPORTATION AND**
14   CARLOS GARCIA,                            **SETTING STATUS
                                               CONFERENCE**
15                             Defendant.

16

17       Defendant has been charged with illegal reentry after deportation in violation of

18   8 U.S.C. § 1326.  Defendant now moves to dismiss the indictment on the ground that

19   his underlying deportation proceeding was invalid.  On August 10, 2007, the court held

20   a hearing on the motion.  After considering the submissions of the parties, as well as

21   oral argument of counsel, the court concludes for the reasons that follow that (1) the

22   immigration judge's failure to advise Defendant of the availability of relief during

23   Defendant's deportation proceedings violated Defendant's due process rights and that

24   (2) Defendant suffered prejudice as a result of the due process violation.  Accordingly,

25   the motion to dismiss the indictment is granted.

26   **BACKGROUND**

27       Defendant, a native and citizen of Mexico, entered the United States in 1978.

28   On November 4, 1989, Defendant became a permanent resident.  On July 20, 1995,

07cr0131

1   Defendant pled guilty to the offense of assault with a firearm in violation of section
2   245(a)(2) of the California Penal Code for which he was sentenced to two years in
3   custody.  Defendant served thirteen months.  At the time Defendant pled guilty to
4   violating § 245(a)(2), the immigration laws provided that

5       Any alien who at any time after entry is convicted under any law of
    purchasing, selling, offering for sale, exchanging, using, owning,
6       possessing, or carrying, or of attempting or conspiring to purchase, sell,
    offer for sale, exchange, use, own, possess, or carry, any weapon, part, or
7       accessory which is a firearm or destructive device (as defined in section
    921(a) of Title 18) in violation of any law is deportable.
8

9   8 U.S.C. § 1251(a)(2)(C) (1995).  Relying on this ground of deportability, the then-
10  Immigration and Naturalization Service issued, on November 14, 1995, an Order to
11  Show Cause ("OSC") asserting that Defendant was subject to deportation.  Mot, Ex.
12  B.

13      On August 17, 1996, Defendant was placed in deportation proceedings.  Id., Ex.
14  C. The documents from Defendant's immigration file which the IJ could have relied
15  upon for finding deportability were the information filed by the district attorney for the
16  county of Orange alleging, inter alia, that Defendant had violated § 245(a)(2) by
17  willfully and unlawfully assaulting the victim with a firearm, and a California abstract
18  of judgment indicating that Defendant had pled guilty to the same.  Gov't Oppo., Exs
19  1-2. Additionally, Defendant admitted to the IJ that Defendant had been convicted of
20  assault with a firearm for which he served thirteen months imprisonment.  Mot., Ex. C
21  at 5.  Upon conclusion of the hearing, the IJ stated, "I don't see a pardon available for
22  you right now.  What this means is I have to order you deported, but this your only
23  conviction though and you may be eligible for documents in the future through your
24  parents. But you will lose the green card you have now." Id. at 6.  Defendant indicated
25  that he wished to accept the IJ's decision rather than to appeal.  The IJ did not advise
26  Defendant of the availability of relief under § 212(c), (h) of the Immigration and
27  Nationality Act ("INA").

28      At the time Defendant pled guilty in 1995, the immigration law existed as

07cr0131

follows.  An eligible legal permanent resident alien who was subject to deportation could apply to the Attorney General for a discretionary waiver of deportation under § 212(c) of the INA unless the alien had been convicted of an aggravated felony for which the alien served at least five years of imprisonment. 8 U.S.C. § 1182(c) (1995). Although § 212(c) relief, by its literal terms, could have only been granted in situations where an alien was being excluded from the United States, agencies and courts have, and had, long interpreted § 212(c) as having equal application to deportation proceedings if the basis for deportation could be found in the exclusion laws. Abebe v. Gonzales, ___ F.3d ___, 2007 WL 1965165, *7 (9th Cir. July 9, 2007) (noting that "BIA and court precedent had for many years indicated that § 212(c) relief was available only to those aliens charged as deportable on a ground comparable to a ground of exclusion.").  Aliens who were deportable on the ground of having been convicted of a firearms offense, however, were categorically ineligible for § 212(c) waivers of deportation because there existed no comparable ground for exclusion. Komarenko v. INS, 35 F.3d 432, 435 (9th Cir. 1994).[1] Still, under BIA authority, relief from deportation remained available to a legal permanent resident alien subject to deportation for having sustained a firearms conviction if the alien applies for a § 212(c) waiver along with an adjustment of status. See In re Azurin, 23 I.. & N. Dec. 695, 696, 2005 WL 622661 (BIA Mar. 9, 2005); see also id. at 699 n.2 ("We note that in the absence of an application for adjustment of status, the respondent [who had been found deportable for a firearms conviction] would not be able to employ section 212(c) to waive the firearms and aggravated felony grounds of removability charged against him because they have no comparable grounds of inadmissibility."); Matter of Rainford, 20 I.& N. Dec. 598, 602, 1992 WL 323809 (BIA Sept. 9, 1992) ("Accordingly, we hold

_____

[1] In Komarenko, the alien conceded he was deportable for his assault with a firearm conviction under California Penal Code § 245(a)(2), but argued that the BIA erred in concluding that the alien was ineligible for a waiver under § 212(c) because an alien would not also be excluded for having sustained such a conviction. The Ninth Circuit rejected the argument and held that the BIA's conclusion was correct. Komarenko, 35 F.3d at 434-35.

1   that the conviction which renders the respondent deportable under section 241(a)(2)(C)
2   of the [Immigration and Nationality] Act will not preclude a showing of admissibility
3   for purposes of section 245(a)['s adjustment of status] and that if granted adjustment
4   of status to lawful permanent resident, the respondent will no longer be deportable on
5   the basis of [his conviction for criminal possession of a weapon].").

6        In April 1996, after Defendant pled guilty but before he was placed in
7   deportation proceedings, Congress enacted the Anti-Terrorism and Effective Death
8   Penalty Act ("AEDPA") which changed the law with regard to waivers of deportation.
9   Whereas under the prior law deportable, legal permanent resident aliens, who had not
10  served at least five years' imprisonment for an aggravated felony could apply for §
11  212(c) relief (assuming the comparable ground rule was satisfied), under AEDPA such
12  relief became unavailable to any alien classified as an aggravated felon, regardless of
13  the length of the sentence served.   Then, after Defendant pled guilty and after
14  Defendant was placed in deportation proceedings in August 1996, Congress enacted,
15  in September 1996, the Illegal Immigration Reform and Immigrant Responsibility Act
16  ("IIRIRA"), effective April 1997. INS v. St. Cyr, 533 U.S. 289, 315 (2001). IIRIRA
17  repealed § 212(c) in its entirety; in its stead was a new provision giving the Attorney
18  General discretion to cancel removal for a narrow class of inadmissible or deportable
19  aliens, a class which did not include aggravated felons. Id. at 297.   Later, in 2001, the
20  Supreme Court held that an alien who pled guilty to a deportable crime, in reliance on
21  the availability of relief from deportation at the time of the plea, remained eligible for
22  such relief even when the alien is placed in removal proceedings after such relief was
23  repealed. Id. at 326.

24        Against this backdrop, the court now turns to the merits of Defendant's collateral
25  attack on his order of deportation.
26  **DISCUSSION**

27        "A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth
28  Amendment right to collaterally attack his removal order because the removal order

- 4 -

serves as a predicate element of his conviction." <u>United States v. Ubaldo-Figueroa</u>, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837-38 (1987)).  An alien charged with violating § 1326 may not collaterally attack the underlying deportation order unless it is demonstrated that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). An alien does not exhaust his administrative remedies if he validly waives his right to appeal the deportation order. <u>United States v. Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000).  In order to be valid, the alien's waiver must be "considered and intelligent." <u>Id.</u> (citing <u>United States v. Estrada-Torres</u>, 179 F.3d 776, 780 (9th Cir. 1999). A waiver of appeal is not considered and intelligent if the IJ fails to inform the alien that the alien is eligible for relief from deportation, thereby depriving the alien of the opportunity to develop the issue. <u>United States v. Muro-Inclan</u>, 249 F.3d 1180, 1182 (9th Cir. 2001) (citing <u>Arrieta</u>, 224 F.3d at 1079). The Ninth Circuit has held that this advisal is mandatory. <u>Arrieta</u>, 224 F.3d at 1079; <u>United States v. Arce-Hernandez</u>, 163 F.3d 559, 563 (9th Cir. 1998).

If the alien's waiver of appeal is found invalid because it was not considered and intelligent, the alien is exempt from the exhaustion requirement as set forth in § 1326(d)(1).  <u>See</u> <u>Muro-Inclan</u> at 1183 ("The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."). An invalid waiver also deprives the alien of judicial review of his deportation order as set forth in § 1326(d)(2). <u>United States v. Pallares-Galan</u>, 359 F.3d 1088, 1096 (9th Cir. 2004) (citing <u>United States v. Leon-Paz</u>, 340 F.3d 1003, 1005 (9th Cir. 2003)).

Finally, entry of the deportation order is fundamentally unfair, thereby satisfying

07cr0131

1 | § 1326(d)(3), when defects in the deportation proceedings violate the alien's due
2 | process rights and the alien suffered prejudice as a result. <u>United States v. Ubaldo-</u>
3 | <u>Figueroa</u>, 364 F.3d 1042, 1048 (9th Cir. 2004); <u>Muro-Inclan</u>, 249 F.3d at 1184. To
4 | establish prejudice, the alien must show that he had "plausible grounds" for relief from
5 | deportation, <u>Muro-Inclan</u>, 249 F.3d at1184; <u>Kahn v. INS</u>, 36 F.3d 1412, 1413 (9th Cir.
6 | 1994) (providing that whether the alien had plausible grounds for § 212(c) relief
7 | depends on a balance of the equities).

8 | **Exhaustion of Administrative Remedies and Deprivation of Opportunity for**
9 | **Judicial Review**

10 | **Section 212(c) Relief**

11 | Defendant argues he is exempt from exhausting his administrative remedies and
12 | that he was deprived of the opportunity for judicial review under § 1326(d)(1)-(2) due
13 | to the IJ's failure to advise him of the availability of § 212(c) relief, thereby rendering
14 | Defendant's waiver of the right to appeal the IJ's decision not "considered and
15 | intelligent." In response, the government contends that the IJ did not err in failing to
16 | advise Defendant of such relief because, inter alia, he was an aggravated felon with no
17 | recourse to such relief.

18 | Defendant was placed in deportation proceedings in August 1996, before IIRIRA
19 | was enacted in September 1996 and thus before § 212(c) was repealed. Therefore,
20 | even without <u>St. Cyr</u>, the repeal of § 212(c) is irrelevant to whether § 212(c) was
21 | available to Defendant. Furthermore, Defendant was eligible to receive § 212(c) relief.
22 | Although Defendant could not have applied for a § 212(c) **waiver of deportation**
23 | because his ground of deportation was conviction for a firearms offense,[2] <u>Komarenko</u>,
24 | 35 F.3d at 435, Defendant could have applied for a § 212(c) **waiver of inadmissibility**
25 | in connection with an **application for adjustment of status** under § 245(a) of the INA.
26 | Such an application, if approved, would have made Defendant no longer deportable for

27 |

28 | [2]Defendant's arguments that he was not convicted of a firearms offense for purposes of deportability will be addressed later in this order.

07cr0131

1  having been convicted of assault with a firearm.  Rainford, 20 I. & N. at 601.[3]
2  Furthermore, Defendant's conviction and two-year prison sentence did not meet the
3  definition of an "aggravated felony" at the time of deportation because at that time an
4  "aggravated felony" included, among other things, "a crime of violence (as defined in
5  section 16 of Title 18, but not including a purely political offense) for which the term
6  of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5
7  years[.]" 8 U.S.C. § 1101(a)(43)(F) (1996).[4]

8      The government argues that this case is controlled by United States v. Herrera-
9  Blanco, 232 F.3d 715 (9th Cir. 2000), wherein the Ninth Circuit, in a pre-St. Cyr
10 decision, held that AEDPA's withdrawal of § 212(c) relief for all aggravated felons
11 applied retroactively to an alien who had been convicted in 1990 of burglary and sexual
12 assault but placed in deportation proceedings in 1998, after the 1996 enactment of
13 AEDPA. Herrera-Blanco, however, is inapplicable to the instant case. There, the alien
14 had pled not guilty and was convicted by jury trial; therefore he could not have relied
15 on the availability of § 212(c) relief in deciding whether or not to plead guilty. Id. at
16 717.  By contrast, Defendant pled guilty before the passage of both AEDPA and
17 IIRIRA, and therefore his case falls within St. Cyr, not Herrera-Blanco.

18     The government also argues that because Defendant's conviction is a crime of
19 violence, and his sentence exceeded one year, it is an aggravated felony which renders
20 Defendant deportable and ineligible for relief as set forth in current immigration
21 statutes. Gov't Oppo. at 4:23-28 (citing United States v. Diaz-Argueta, 447 F.3d 1167,
22 1170 (9th Cir. 2006) (rejecting argument that assault with a firearm in violation of

23

24     [3]Moreover, California law requires a judge to advise a defendant of the
   immigration consequences of pleading guilty before accepting the guilty plea. Cal.
25 Penal Code § 1016.5. The court presumes that Defendant pled guilty on reliance of the
   availability of relief from deportation. Cf. St. Cyr, 533 U.S. at 322 ("There can be little
26 doubt that, as a general matter, alien defendants considering whether to enter into a
   plea agreement are acutely aware of the immigration consequences of their
27 convictions.").

28     [4]The OSC charged Defendant with being deportable for having been convicted
   of a firearms offense, however, not for being an aggravated felon. See Mot, Ex. B.

07cr0131

1  California Penal Code § 245(a)(2) is not a crime of violence for purposes of sentencing
2  laws)).  This argument is contrary to <u>St. Cyr</u>, which requires this court to examine
3  whether Defendant was eligible for § 212(c) relief at the time he pled guilty, not
4  whether Defendant would be eligible today for such relief under the current statutes.
5  <u>St. Cyr</u>, 533 U.S. at 326 ("We therefore hold that § 212(c) relief remains available for
6  aliens, like respondent, whose convictions were obtained through plea agreements and
7  who, notwithstanding those convictions, *would have been eligible for § 212(c) relief*
8  *at the time of their plea under the law then in effect.*") (emphasis added).  As stated
9  earlier, at the time Defendant pled guilty in 1994, Defendant could have applied for a
10 § 212(c) waiver of inadmissibility in conjunction with an application for adjustment of
11 status. <u>Rainford</u>, 20 I. & N. at 601.  <u>Briseno v. INS</u>, 192 F.3d 1320 (9th Cir. 1999), cited
12 by the government and decided before <u>St. Cyr</u> was decided, is not to the contrary.
13 Gov't Oppo. at 6.  <u>Briseno</u>, which involved a direct appeal of a deportation order, held
14 that because the alien was deportable as an aggravated felon, and because IIRIRA
15 stripped federal courts of jurisdiction to review the executive branch's decision to
16 deport aggravated felons, the Ninth Circuit lacked jurisdiction to entertain the alien's
17 claim even though the OSC charged the alien with being deportable for having
18 committed two crimes involving moral turpitude and not for being an aggravated felon.
19 <u>Id.</u> at 1322.  Here, the issue is not whether Defendant's conviction for assault with a
20 firearm rendered him an aggravated felon for purposes of the jurisdiction-stripping
21 provisions of IIRIRA, which it did not for the reasons already stated, but whether he
22 was an aggravated felon for purposes of determining eligibility for § 212(c) relief at the
23 time Defendant entered his guilty plea.  At the time Defendant pled guilty, § 212(c)
24 relief was foreclosed for aggravated felons who had served five years in prison.  8
25 U.S.C. § 1182(c) (1995).  Once again, not only was Defendant not an aggravated felon
26 because he was not convicted of a crime of violence for which a prison term of at least
27 five years was imposed, <u>id.</u> § 1101(a)(43)(F) (1996),  but even if Defendant were an
28 aggravated felon, he would not have been in the class of aggravated felons ineligible

07cr0131

1   for a § 212(c) waiver at that time as he did not serve at least five years imprisonment.

2   Next, the government argues that Defendant would not have been eligible for a

3   § 212(c) waiver because Defendant was three months shy of the requisite seven

4   consecutive years of lawful, unrelinquished domicile in the United States as set forth

5   in the statute.  Gov't Oppo. at 5-6; 8 U.S.C. § 1182(c) (1994).  This argument runs

6   afoul of United States v. Jimenez-Marmolejo, 104 F.3d 1083 (9th Cir. 1996), in which

7   the Ninth Circuit held a deportable alien was prejudiced by his invalid waiver of appeal

8   because

> Had Jimenez-Marmolejo appealed the deportation order, he would have
> become eligible for discretionary relief from deportation pursuant to §
> 212(c) of the Immigration and Naturalization Act during the pendency of
> his appeal. 8 U.S.C. § 1182(c). In order to be eligible for § 212(c)
> discretionary relief from deportation, persons must have been lawful
> resident aliens for seven consecutive years. Id. **An alien may continue to
> accrue time toward the § 212(c) seven-year requirement while the alien
> appeals a deportation decision, even if that alien has conceded
> deportability at the immigration hearing, as Jimenez-Marmolejo did.**
> Foroughi v. INS, 60 F.3d 570, 572 (9th Cir. 1995). The record is clear that
> Jimenez-Marmolejo would have become eligible for such relief if he had
> appealed the deportation decision because he was only two months shy of
> the seven-year lawful residence requirement at the time of his deportation
> hearing. Jimenez-Marmolejo entered the United States without inspection
> in 1976, but he applied for amnesty in June of 1987, pursuant to the
> Immigration Reform and Control Act of 1986 (IRCA). The § 212(c)
> seven-year period of lawful residence is triggered on the date an illegal
> alien applies for amnesty pursuant to the IRCA. Ortega de Robles v. INS,
> 58 F.3d 1355, 1360 (9th Cir. 1995). Thus, Jimenez-Marmolejo had lived
> continuously in the United States as a lawful permanent resident for six
> years and ten months by the time of his deportation hearing in April 1994.

Id. at 1085-86 (emphasis added footnote omitted); see also Foroughi v. INS, 60 F.3d

570, 572 (9th Cir. 1995) ("[T]he lawful permanent resident status of an alien who

concedes deportability continues while that alien pursues an administrative appeal of

the denial of discretionary relief embodied in the Immigration Judge's deportation

order.").  Therefore, the fact that Defendant fell a few months shy of the seven-year

residency requirement did not render Defendant ineligible for § 212(c) relief at the time

of his deportation hearing because he would have satisfied the requirement had he

pursued his appeal.

Finally, the government contends that St. Cyr was never intended to absolve the

07cr0131

1  criminal liability of aliens who illegally re-enter the United States and are subsequently

2  prosecuted for violations of § 1326. Such an argument, however, ignores this court's

3  obligation to follow <u>St. Cyr</u> and the post-<u>St. Cyr</u> Ninth Circuit case law developed

4  around collateral attacks on deportation orders in determining whether Defendant is

5  entitled to his requested relief. <u>See, e.g.</u>, <u>Pallares-Galan</u>, 359 F.3d at 1096 (sustaining

6  collateral attack to an underlying deportation order, which was entered before <u>St. Cyr</u>

7  was decided, where the IJ failed to advise the alien of relief made available later by <u>St.</u>

8  <u>Cyr</u>); <u>Leon-Paz</u>, 340 F.3d at 1004-07 (same).

9      Based upon the foregoing analysis, the court finds that Defendant was eligible

10  for § 212(c) relief at the time he was deported. The IJ's failure to advise Defendant of

11  the availability of such relief rendered Defendant's waiver of appeal as one which was

12  not considered and intelligent.[5] Accordingly, Defendant is exempt from the exhaustion

13  requirement of § 1326(d)(1) and he has been deprived of the opportunity for judicial

14  review pursuant to § 1326(d)(2). <u>Pallares-Galan</u>, 359 F.3d at 1096; <u>Muro-Inclan</u>, 249

15  F.3d at 1182; <u>Arrieta</u>, 224 F.3d at 1079. The court now turns to the last prong of §

16  1326(d).

17  **<u>Due Process Violation</u>**

18      Entry of a deportation order is fundamentally unfair as set forth in § 1326(d)(3)

19  if defects in the deportation proceedings violated the alien's due process rights and

20  caused prejudice to the alien. <u>Ubaldo-Figueroa</u>, 364 F.3d at 1048. An alien is deprived

21  of due process when an IJ fails to advise the alien of the possibility of relief from

22  deportation, thereby rendering the alien's waiver of appeal not considered and

23  intelligent. <u>Id.</u>; <u>Arrieta</u>, 224 F.3d at 1079; <u>Arce-Hernandez</u>, 163 F.3d at 563. Since the

24

---

25      [5]Alternatively, Defendant argues he was eligible for voluntary departure and that
therefore the failure of the IJ to advise Defendant of such relief rendered Defendant's
26  waiver of appeal invalid. This argument lacks merit. At the time Defendant pled guilty
in July 1995, certain deportable aliens were eligible for voluntary departure from the
27  United States at the Attorney General's discretion. 8 U.S.C. § 1254(e) (1995).
Voluntary departure was not available, however, to aliens like Defendant who were
28  deportable for certain firearm offenses. <u>Id.</u> §§ 1254(e), 1251(a)(2)(C) (1995).

1  court has already determined, in conjunction with its § 1326(d)(1)-(2) analysis, that
2  Defendant's waiver of appeal was not considered and intelligent, the court also finds
3  that Defendant suffered a due process violation.

4      Defendant also argues that his due process rights were violated when the
5  government failed to prove deportability by clear and convincing evidence.
6  Specifically, Defendant contends the government did not sufficiently prove that
7  Defendant had been convicted of an offense involving a "firearm" because the federal
8  definition of a "firearm" does not include an antique firearm, while California does not
9  contain any such exceptions for antique firearms. 18 U.S.C. § 921(a)(3); see Cal. Penal
10 Code § 12021(A)(1).  According to Defendant, therefore, the government bore the
11 burden to prove that Defendant did not use an antique firearm when he sustained the
12 conviction.  In response, the government does not dispute that the definition of a
13 firearm under federal and California law are different with respect to the treatment of
14 antique firearms.  Rather, the government argues that Defendant bears the burden to
15 prove that he used an antique firearm because the antique firearm exception, pursuant
16 to out-of-circuit authority, is an affirmative defense.  United States v. Lawrence, 349
17 F.3d 109, 122 (3d Cir. 2003); United States v. Washington, 17 F.3d 230, 232 (8th Cir.
18 1994); United States v. Williams, 979 F.2d 186, 187 (11th Cir. 1992) (per curiam);
19 United States v. Smith, 981 F.2d 887, 892 (6th Cir. 1992).[6]

20     In determining whether a conviction constitutes a deportable offense, the IJ must
21 generally follow a categorical approach, that is, the IJ must look only to the elements
22 of the offense defined by the statute and case law and not to the particular facts
23 underlying the conviction.  Sareang Ye v. INS, 214 F.3d 1128, 1133 (9th Cir. 2000)
24 (citing Taylor v. United States, 495 U.S. 575, 600 (1990)).  A modified categorical
25 approach, wherein the IJ may review facts beyond the mere fact of conviction, is
26 permitted in the narrow class of cases where the trier of fact was actually required to
27 find all elements of a generic offense.  Taylor, 495 U.S. at 602.

28

---

[6]It appears the Ninth Circuit has not addressed the issue.

07cr0131

1    The court finds, based on the above persuasive authority from other circuits, that
2    the government need not disprove the use of an antique firearm in order to prove
3    deportability for a firearms offense unless the alien first comes forth with some
4    evidence of an antique firearm.  To conclude otherwise would require the government
5    in every deportation proceeding to disprove the antique firearm exception, a result
6    Congress could not have intended when it adopted the exception and for which no
7    authority exists.  Other circuits have concluded that the federal exception for antique
8    firearms is an affirmative defense on which the defendant bears the burden of proof.
9    When Defendant was confronted with his assault with a firearm conviction at the
10   deportation hearing, Mot., Ex.C at 5, he could have, at minimum, argued the antique
11   firearm exception as an affirmative defense at that time and put the government to its
12   burden to prove deportability; he did not.  For these reasons, Defendant's argument that
13   he was not deportable because the government did not prove Defendant did not use an
14   antique firearm lacks merit.

15   Defendant also argues that he was not deportable for a firearms offense because
16   the conviction documents do not clearly establish whether he was convicted of aiding
17   and abetting the possession of a firearm or as a principal, and that in order to be
18   deportable he must have been convicted of actually possessing the firearm as a
19   principal.  See Mot. at 8.  The provision pursuant to which Defendant was deemed
20   deportable, however, provided as follows at the time of Defendant's deportation
21   hearing:

22   Any alien who at any time after entry is convicted under any law of
     purchasing, selling, offering for sale, exchanging, using, owning,
23   possessing, or carrying, **or of attempting or conspiring to purchase, sell,**
     **offer for sale, exchange, use, own, possess, or carry,** any weapon, part,
24   or accessory which is a firearm or destructive device (as defined in section
     921(a) of Title 18) in violation of any law is deportable.
25

26   § 245(a)(2) of the INA, codified at 8 U.S.C. § 1251(a)(2)(C) (1996) (emphasis added).
27   The statute thus rendered aliens deportable for attempting or conspiring to possess a
28   firearm; actual possession of the firearm is not required.  Defendant's argument that the

- 12 -

07cr0131

1  government, to meet its burden to prove deportability by clear and convincing
2  evidence, was required to show that Defendant actually possessed the firearm as a
3  principal (as opposed to an aider and abettor) is therefore unpersuasive.

4  Finally, Defendant argues under United States v. Navidad-Marcos, 367 F.3d 903
5  (9th Cir. 2004) that it was per se improper for the IJ to rely on the abstract of judgment
6  in deciding whether Defendant was deportable.  Navidad-Marcos, however, did not
7  hold that an abstract of judgment cannot be considered under the Taylor modified
8  categorical approach to establish a predicate offense.  Rather, the Ninth Circuit only
9  found that the abstract of judgment in Navidad-Marcos, as a factual matter, did not
10  support enhancement of the defendant's sentence for having sustained a prior drug
11  trafficking conviction.  Id. at 909 ("Therefore, *this* abstract of judgment fails to satisfy
12  the 'rigorous standard' required by Taylor's modified categorical approach, and we
13  must vacate the sentence and remand for re-sentencing.") (emphasis added).
14  Moreover, abstracts of judgment in combination with the state's charging instrument,
15  which were the documents considered in Defendant's case, may be judicially noticed
16  under the Taylor modified categorical approach to establish a predicate offense.  United
17  States v. Valle-Montalbo, 474 F.3d 1197, 1201-02 (9th Cir. 2007).

18  **Prejudice**

19  Defendant's collateral attack cannot prevail, however, unless Defendant also
20  shows that prejudice flowed from the due process violation.  To show prejudice,
21  Defendant must demonstrate that he had plausible grounds for obtaining § 212(c) relief
22  at the time of deportation.  Muro-Inclan, 249 F.3d at 1184.  Defendant need not show
23  that he actually would have been granted relief.  Id.

24  Former § 212(c) was "interpreted to authorize any permanent resident alien to
25  apply for discretionary waiver of deportation." United States v. Gonzalez-Valerio, 342
26  F.3d 1051, 1053 (9th Cir. 2003).  Although § 212(c) was provided for in the exclusion
27  laws, it also applies in the deportation context under certain circumstances.  United
28  States v. Ayala-Chavez, 944 F.2d 638, 640 n.2 (9th Cir. 1991) (citing Tapia-Acuna v.

1  INS, 640 F.2d 223, 224 (9th Cir. 1981)).  Whether a § 212(c) waiver would have been
2  granted depends on the individual merits of each case, balancing "the social and human
3  considerations presented on the alien's behalf against the adverse factors including the
4  alien's undesirability as a permanent resident."  Kahn, 36 F.3d at 1413.  Positive
5  factors to consider include the existence of family ties within the United States, how
6  long the alien has resided in the United States, hardship to the alien and family if
7  deported, history of employment, property or business ties, community service, and
8  whether, in the case of an alien with a criminal history, there has been genuine
9  rehabilitation.  Id.  Negative factors include "the nature of the ground for deportation,
10  the presence of other violations of the immigration laws, the nature, recency, and
11  seriousness of any criminal record, and the presence of any other evidence of the
12  applicant's bad character or undesirability as a legal permanent resident of the United
13  States."  Id.

14         Considering the negative factors first, the record demonstrates that Defendant
15  has sustained only one criminal conviction, for assault with a firearm; Defendant has
16  no other criminal history.  Defendant's conviction is for a serious crime, one which
17  involved a substantial risk of physical harm to the victim.  As far as the recency of
18  Defendant's criminal record, the § 245(a)(2) conviction, having been sustained
19  approximately one year prior to deportation, occurred close to the time of deportation
20  but more than a decade ago.  The recency of the crime, therefore, is neither a negative
21  nor a positive factor.  There is no evidence in the record of Defendant's bad character
22  or undesirability as a legal permanent resident.

23         As to positive factors, Defendant contends that he was two years-old when he
24  first arrived in the United States, that he had lived continuously in the United States
25  until his deportation in 1996, that his primary language is English and that he has
26  essentially never lived in Mexico, that his immediate family all reside in the United
27  States, that he was educated and employed in the United States, and that he has a
28  positive relationship with his siblings.  In addition, Defendant's mother, a legal

07cr0131

1  permanent resident, and Defendant's stepfather, a United States citizen, have provided
2  declarations indicating that Defendant was close to his siblings, that the entire family
3  lived together while the children were growing up, and that Defendant contributed to
4  the family's finances through income earned from employment. <u>See</u> C. Gonzalez
5  Decl., S. Gonzalez Decl.

6        A balancing of the factors above suggests that Defendant had plausible grounds
7  for § 212(c) relief from deportation. Although Defendant was convicted of a serious
8  crime, he was sentenced to only two years and served a lesser sentence of thirteen
9  months. Defendant has no other criminal history and there is no other evidence before
10  the court to suggest that his conviction was more than an isolated incident.
11  Additionally, Defendant has resided in the United States since a very young age, was
12  educated here, and has familial and employment ties in the United States. Accordingly,
13  Defendant has established a prima facie case of prejudice.[7]

14        When the alien makes a prima facie showing of prejudice, the burden shifts to
15  the government to demonstrate that the due process violation could not have changed
16  the outcome of the deportation proceedings. <u>Gonzalez-Valerio</u>, 342 F.3d at 1054. The
17  government has not come forward with any evidence or argument that Defendant
18  would have otherwise been deported. Accordingly, Defendant has satisfied his burden
19  to prove prejudice.

20        Defense counsel also argued at oral argument, pursuant to the unpublished and
21  non-precedential decision <u>United States v. Flores-Rodriguez</u>, No. 06-50099, 2007 WL
22  1663681 (9th Cir. June 8, 2007), that Defendant could have been eligible for a waiver
23  of deportation pursuant to § 212(h) of the INA, which at the time of Defendant's
24  deportation provided in relevant part:

25

26        (h) Waiver of subsection (a)(2)(A)(i)(I), (II), (B), (D), and (E)

27  ─────────────────────

28  [7]Even the IJ, at the time he advised Defendant, seemed to encourage Defendant
to seek future relief through his parents' status in light of the firearm conviction being
Defendant's only criminal history. Mot, Ex. C at 6.

07cr0131

1

2   The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I) [deportable for crime of moral turpitude], (B)
3   [deportable for multiple criminal convictions], (D) [deportable for prostitution or commercialized vice], and (E) [aliens who have asserted
4   criminal immunity] of subsection (a)(2) of this section and subparagraph (A)(i)(II) [conviction related to controlled substance] of such subsection
5   insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if–

6   . . .

7   (1)(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for
8   permanent residence if it is established to the satisfaction of the Attorney General that the alien's exclusion would result in **extreme hardship** to the
9   United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and.

10
11   (2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has
12   consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

13

14
15   8 U.S.C. § 1182(h) (1996) (emphasis added).  Defendant argued, on the basis of his

16   mother's declaration, that at the time of his deportation, his mother was a legal

17   permanent resident, that she could have become a naturalized United States citizen, and

18   that she would have applied for naturalization at the time of Defendant's deportation

19   in order to assist Defendant in obtaining a § 212(h) waiver of inadmissibility in

20   conjunction with an application for adjustment of status.  Tr. at 4; C. Gonzalez Decl.

21   ¶ 24.  This argument, even if true, does not support a finding that Defendant would

22   have been eligible for § 212(h) relief, however, because Defendant has not made a

23   sufficient showing that his deportation would have resulted in extreme hardship.  Proof

24   of extreme hardship for purposes of § 212(h) requires "great actual or prospective

25   injury" or "extreme impact" on the citizen or lawful resident family member, beyond

26   the "common results of deportation" such as "[t]he difficulty in having to move one's

27   family elsewhere and anticipated difficulties in finding work[.]" Muro-Inclan, 249 F.3d

28   at 1184 (quoting United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998)).

The declarations of Defendant's mother and stepfather speak to the emotional impact

- 16 -

07cr0131

1  on Defendant's immediate family caused by Defendant's deportation in 1996, and that
2  prior to deportation Defendant had contributed to the family's finances in an unstated
3  sum.  Nothing in these declarations suggests great injury to or an extreme impact on
4  Defendant's family resulting from the deportation.   Therefore, to the extent
5  Defendant's collateral attack is predicated on the availability and likelihood of § 212(h)
6  relief, his attack fails.

7  **CONCLUSION**

8  Because Defendant has satisfied all three prongs under § 1326(d), he has
9  successfully attacked his underlying deportation order.  Since his deportation order has
10 been determined to be invalid for the reasons set out above, it cannot form the basis for
11 a § 1326 prosecution.  Accordingly, the motion to dismiss the indictment for invalid
12 deportation is **GRANTED**.  A status conference is set for Friday, August 31, 2007 at
13 9:00 AM at which all counsel and Defendant are ordered to appear.

15 **IT IS SO ORDERED.**

17 DATE:_____8/21_____, 2007

20 _____
   **JEFFREY T. MILLER**
21 United States District Judge

22 cc:    all parties

- 17 -

07cr0131